J-A09026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| GARY J. BEECHER, II | |
| Appellant | No. 2196 EDA 2013 |

Appeal from the Judgment of Sentence August 31, 2012
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001663-2011
CP-15-CR-0001507-2011

BEFORE: BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.: **FILED OCTOBER 10, 2014**

Gary J. Beecher, II, appeals from the judgment of sentence imposed on August 31, 2012, in the Chester County Court of Common Pleas. Beecher was sentenced to an aggregate term of four to eight years' imprisonment with a consecutive 15 years of probation, following his *nolo contendere* pleas to the following offenses: (1) at Docket No. 1507-2011, one count of unlawful contact with a minor, two counts of indecent assault, one count of corruption of minors, and one count of endangering welfare of children ("EWOC");[1] and (2) at Docket No. 1663-2011, one count each of

_____

[1] 18 Pa.C.S. §§ 6318(a)(1), 3126(a)(7), 6301(a)(1) and 4304(a)(1), respectively.

indecent assault, indecent exposure, corruption of minors, and EWOC.[2]  On appeal, Beecher raises two issues with respect to his classification as a sexually violent predator ("SVP") pursuant to "Megan's Law III."[3]  For the reasons set forth below, we affirm.

The relevant factual and procedural history of this case, as gleaned from the certified record, may be summarized as follows.  Beecher's convictions stem from allegations made by Beecher's own 15-year-old daughter and the six-year-old daughter of Beecher's then girlfriend that he indecently assaulted them.[4]  On January 17, 2012, Beecher entered a plea of *nolo contendere* with an agreed upon sentence that was approved by the trial court pending an SVP assessment and hearing.  Beecher then pled to the charges as stated above.  In conjunction with his plea, Beecher executed a colloquy form, including his understanding of the consequences of pleading

_____

[2]  18 Pa.C.S. §§ 3126(a)(7), 3127(a), 6301(a)(1) and 4304(a)(1), respectively.

[3]  *See* 42 Pa.C.S. § 9791 -9799.9*.*  We note that after Beecher's judgment of sentence was imposed, a new version of Megan's Law went into effect on December 20, 2012.  *See* 42 Pa.C.S. §§ 9799.10-9799.41 (as amended 2011, Dec. 20, P.L. 446, No. 111, § 12).  The Pennsylvania Legislature amended Megan's Law to comply with the federal Sex Offender Registration and Notification Act ("SORNA").  *See* 42 U.S.C. § 16901.

[4]  Allegations were also made by three friends of Beecher's daughter that he had inappropriate sexual contact with them.  These charges were withdrawn as part of the *nolo contendre* plea agreement.

guilty to a Megan's Law Offense and the consequences of being classified as an SVP. At the conclusion of the plea hearing, the court entered an order directing the State Sexual Offender Assessment Board ("SOAB") to perform an assessment of Beecher to determine if he is an SVP. The assessment was performed and on April 3, 2012, the SOAB sent notice that Beecher met the criteria of an SVP.

On May 2, 2012, Beecher filed a petition seeking funds to hire an expert in the field of Sexual Offenders Assessment. A hearing was held and on June 5, 2012, the court granted the petition. On August 31, 2012, an SVP evidentiary hearing and sentencing proceeding was held. Bruce Mapes, Ph.D., testified for the Commonwealth and Stephen Mechanick, M.D., testified for the defense. Following the testimony, the trial court determined Beecher was an SVP pursuant to 42 Pa.C.S. § 9795.4(e).

That same day, the trial court sentenced Beecher to the following: (1) at Docket No. 1507-2011, two to four years of incarceration for unlawful contact with a minor, a consecutive term of one to two years' imprisonment for indecent assault of a person less than 16 years of age, two concurrent terms of one to three years' incarceration for corruption of minors and EWOC, and a concurrent term of one to two years' imprisonment for the second indecent assault crime; and (2) at Docket No. 1663-2011, a term of one to two years' imprisonment for indecent assault of a person less than 13

years of age, to be imposed consecutively to Docket No. 1507-2011 with a consecutive term of 3 years' probation, and three consecutive terms of 4 years' probation for indecent exposure, corruption of minors, and EWOC.

Beecher filed a notice of appeal on September 27, 2012. This Court originally dismissed the appeal for failure to file a docketing statement pursuant to Pa.R.A.P. 3517. Beecher filed a Post-Conviction Relief Act ("PCRA")[5] petition on June 11, 2013. On July 17, 2013, the PCRA court granted the petition and reinstated Beecher's rights to appeal to this Court. A second notice of appeal was filed on July 31, 2013.[6]

In Beecher's first argument, he claims the court erred by relying on Dr. Mapes's report, which was based in part on an incorrect belief that Beecher had entered a guilty plea to the underlying charges, rather than a *nolo contendere* plea. Beecher's Brief at 10. Beecher states, "Although there is no doubt that [his] plea of *nolo contendere* is considered a conviction, it is distinct from a plea of guilty. Dr. Mapes incorrectly incorporated into his report his belief that [Beecher] had admitted to the

---

[5]  42 Pa.C.S. §§ 9541-9546.

[6]  On August 6, 2013, the trial court ordered Beecher to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Beecher complied with the trial court's directive and filed a concise statement on August 23, 2013. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 6, 2013.

underlying offenses by pleading guilty." *Id.* at 12. Beecher contends the trial court, "in turn, relied on Dr. Mapes'[s] report which incorporated that mistaken belief. By accepting Dr. Mapes'[s] conclusions, the court was adopting the mistaken views as its own." *Id.* at 12-13. He concludes that when the court relied on incorrect testimony, it could not find clear and convincing evidence that he qualified as an SVP. *Id.*

The trial court rejected Beecher's argument, stating:

[Beecher]'s allegation that this Court erred in relying on the Commonwealth's expert testimony which was based on an incorrect report that [Beecher] pled guilty to the underlying criminal charges, is without merit. It is true that [Beecher] had entered a *nolo contendre* plea and the Board Member stated in the report that [Beecher] entered a plea of guilty. However, it must be noted that during his interview with Dr. Mapes, [Beecher] alleged that "he entered a plea of guilty in order to protect another party from prosecution." (Exhibit C-1, p.9).

"It is well established that a plea of *nolo contendere* is treated as a guilty plea in terms of its effect upon a given case." Commonwealth v. V.G., 9 A.3d 222, 226 ([P]a. Super. 2010), citing Commonwealth v. Leidig, 850 A.2d 743, 745 (Pa. Super. 2004). "As the United States Supreme Court has held, a plea of *nolo contendere* is 'a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of sentencing to treat him as if he were guilty.'" (emphasis deleted). V.G., 9 A.3d at 226, quoting North Carolina v. Alford, 400 U.S. 25, 36, 91 S.Ct., 160, 167 (1970) and citing Commonwealth v. Lewis, 791 A.2d 1227, 1234 (Pa. Super. 2002).

This court did not err in "relying on the Commonwealth's expert testimony which was based on an incorrect report." The legal distinction of the type of plea [Beecher] entered was of no consequence to the SVP assessment and this court was well aware that [Beecher] entered a *nolo contendre* plea.

Trial Court Opinion, 11/6/2013, at 4-5.

We agree with the trial court's rationale. The trial court, sitting at the plea hearing and the SVP proceeding, was aware that Beecher had entered a *nolo contendere* plea instead of a guilty plea. Therefore, we can assume that it did not rely on the incorrect testimony in making its determination. Moreover, a review of the record reveals that on cross-examination, Dr. Mapes testified to the following:

> Q  Now, are you aware of the fact that on the information and in the investigative reports Mr. Beecher did not plead guilty to any of those charges, are you aware of that?
>
> A  You mean in the current offense?
>
> Q  Yes.
>
> A  Let me find the Court order that was sent to us. According to the order we received, he entered a plea of guilty to one count of unlawful contact and one count of indecent assault.
>
> Q  And those are the offenses that he pled nolo contendere to; is that correct?
>
> A  We received that. He entered a plea of guilty to those.
>
> Q  Well, that would be incorrect, doctor. Would that make a difference?
>
> A  No.
>
> Q  It wouldn't make a difference if he did not plead guilty?
>
> A  No.
>
> Q  In your report?

A  No.

Q  So your report would still be the same?

A  Yes.

…

Q  Whether or not the defendant pled guilty or nolo contendere, would it make a difference?

A  In this particular case, no, it would not because of all the other information that was available.

N.T., 8/31/2012, at 46-48.  As such, Dr. Mapes's conclusion would not have changed regardless of the nature of Beecher's plea due to the other evidence contained in his report.[7]  Accordingly, we conclude Beecher's first argument fails.

Next, Beecher contends the court erred in finding clear and convincing evidence that he qualified as an SVP based on the statutory factors and differing diagnoses from the two expert witnesses.  Beecher's Brief at 13.

_____

[7]  Furthermore, a review of the record reveals that Beecher's counsel did not object to the admissibility of Dr. Mapes's report, which included the incorrect information regarding his plea, and therefore, Beecher waived any challenge to the admission of the report on appellate review.  **See** Pa.R.A.P. 302 ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").  Moreover, Beecher does not seek a new Megan's Law hearing, which would have been the proper remedy for an improper admission of evidence.  **See Commonwealth v. Sanford**, 863 A.2d 428 (Pa. 2004)

Our standard of review of a challenge to an SVP determination is well-settled:

> Questions of evidentiary sufficiency present questions of law; thus, "our standard of review is *de novo* and our scope of review is plenary." In conducting sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial.

***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006) (citations omitted). SVP classification is a statutory question, and not a question of pure science. ***See Commonwealth v. Dengler***, 890 A.2d 372, 383 (Pa. 2005). An SVP is defined as a person who (1) has been convicted of a sexually violent offense as set forth in Section 9795.1 (relating to registration),[8] and (2) is determined to be a sexually violent predator under Section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. ***See*** 42 Pa.C.S. § 9792. The statute defines a "mental abnormality" as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a

_____

[8] Here, we note there is no dispute Beecher was convicted of sexually violent offenses as pursuant to 42 Pa.C.S. § 9795.1. He entered a *nolo contendere* plea to unlawful contact with a minor, and indecent assault – both crimes are listed in Section 9795.1.

degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S. § 9792.

In conducting an SVP assessment, the statute requires, at a minimum, an examination of the factors listed in Section 9795.4(b).[9] In this regard,

_____

[9] The factors set forth in Section 9795.4(b) are as follows:

> (1) Facts of the current offense, including:
>
>> (i) Whether the offense involved multiple victims.
>>
>> (ii) Whether the individual exceeded the means necessary to achieve the offense.
>>
>> (iii) The nature of the sexual contact with the victim.
>>
>> (iv) Relationship of the individual to the victim.
>>
>> (v) Age of the victim.
>>
>> (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
>>
>> (vii) The mental capacity of the victim.
>
> (2) Prior offense history, including:
>
>> (i) The individual's prior criminal record.
>>
>> (ii) Whether the individual completed any prior sentences.
>>
>> (iii) Whether the individual participated in available programs for sexual offenders.

*(Footnote Continued Next Page)*

[t]he [statutory] factors are not a check list with each one weighing in some necessary fashion for or against an SVP determination. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities.

Thus, while the Board is to examine all the factors listed under Section 9795.4, the Commonwealth does not have to show that any certain factor is present or absent in a particular case. Rather, the question for the SVP court is whether the Commonwealth's evidence, including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses.

***Commonwealth v. Feucht***, 955 A.2d 377, 381 (Pa. Super. 2008) (citations

omitted), *appeal denied*, 963 A.2d 467 (Pa. 2008).

_(Footnote Continued)_ ───────────────

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. 9795.4(b).

Here, the main point of contention in Beecher's argument is the differing expert opinions regarding whether Beecher had a mental abnormality or personality disorder that made him likely to engage in predatory sexually violent offenses. The Commonwealth's expert, Dr. Mapes, found Beecher suffered from personality disorder not otherwise specified ("NOS") with "very strong antisocial features[.]" N.T., 8/31/2012, at 33. The defense expert, Dr. Mechanick, opined that Dr. Mapes was incorrect in stating that he could not rule out an antisocial personality disorder because Beecher's history did not indicate a conduct disorder prior to the age of 15, and any isolated incidents of Beecher's past did not exhibit a pattern of behavior which could establish a conduct disorder. Beecher's Brief at 18. Beecher points out Dr. Mechanick found Beecher suffered only from an adult antisocial personality disorder, which is "not necessarily considered to be an enduring pattern of behavior." Beecher's Brief at 20, *quoting* N.T., 8/31/2012, at 94. Moreover, Beecher claims that the court did not address Dr. Mechanick's opinion that Beecher did acknowledge responsibility for some of his past criminal convictions, and joint responsibility for others. Beecher's Brief at 25-26. Likewise, Beecher indicates Dr. Mechanick also stated that because Dr. Mapes incorrectly believed Beecher pled guilty, his conclusion was based on inaccurate information, and if Beecher had not actually committed these acts, as he

claimed, he would not have met the criteria for classification as an SVP. ***Id.*** at 19.

Lastly, relying on ***Commonwealth v. Plucinski***, 868 A.2d 20 (Pa. Super. 2005), Beecher claims that even taking Dr. Mapes's report into account, there was insufficient evidence to support the SVP classification based on the following: (1) there were no allegations of excessive force or unusual cruelty, (2) there was no evidence of a specific deficit in the victims' mental capacity beyond age and the inability to give consent, (3) Beecher had never been ordered to participate in a sex offender program; (4) there was no evidence of drug or alcohol use at the time of the offenses; (5) Beecher was statistically less likely to reoffend because of his age at the time the sex offenses were committed; and (6) the nature of his sexual behavior was less serious than other cases where courts have found there was insufficient evidence to support the SVP finding. Beecher's Brief at 27-29.

A review of the record reveals the following. At the August 31, 2012, hearing, Dr. Mapes, an SOAB member, testified regarding Beecher's conduct and behavior with respect to the enumerated statutory criteria contained in 42 Pa.C.S. § 9795.4(b). In addition to his testimony, Dr. Mapes assessed Beecher and addressed all of the statutory issues of Section 9795.4(b) in his eleven-page report, which was admitted into evidence and reviewed by the

trial court.[10]  ***See generally*** N.T., 8/31/2012, at 4-70.  Dr. Mechanick also testified regarding his personal interview and assessment of Beecher that was reflected in his one-and-a-half page report.  ***Id.*** at 70-116.[11]

Based on all of the testimony, the trial court thoroughly discussed Dr. Mapes's testimony and made findings with respect to Beecher's SVP classification, which complies with Section 9795.4.  ***See*** N.T. 8/31/2012, at 121-134.

With regard to SVP assessments, it is well-settled  that "[t]he task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance." ***Commonwealth v. Meals***, 912 A.2d 213, 223 (Pa. 2006).  Moreover, with respect to the expert opinions, "it is a proper exercise of the trial court's discretion to accept one expert witness's opinion over that of a conflicting opinion where the record adequately supports such a resolution."  ***Commonwealth v. Pruitt***, 951 A.2d 307, 316 (Pa. 2008) (addressing conflicting experts reports in a murder case regarding competency).  Therefore, contrary to Beecher's argument, the trial

---

[10]  In his report and testimony, Mapes noted he personally interviewed Beecher.

[11]  We note neither report was made part of the certified record.  This does not impede our review as both experts testified to the contents of their report and, as analyzed above, the testimony supports the criteria for an SVP status.

court, here, was permitted to accept Dr. Mapes's opinion that Beecher suffered from personality disorder NOS with antisocial features and that he did not acknowledge responsibility for some of his past criminal convictions, as opposed to Dr. Mechanick's determination that Beecher suffered only from an adult antisocial personality disorder and that he did acknowledge responsibility for past crimes.

Based on the testimony, we conclude the trial court's findings are supported by the record and our review of this matter finds no error in the trial court's determination. The Commonwealth presented clear and convincing evidence, *via* Dr. Mapes's testimony, which established Beecher possessed a mental abnormality, personality disorder NOS with antisocial features, that made him likely to engage in predatory sexually violent offenses. ***See Feucht***, 955 A.2d at 863. As evidenced in his testimony and report, Dr. Mapes accounted for all of the statutory factors as set forth in Section 9795.4(b), including the facts of the offenses at issue, Beecher's prior criminal history, and his behavioral characteristics that contributed to his conduct. Based on these factors, he then rendered an opinion, explaining his determination that Beecher met the criteria for classification as an SVP.

Moreover, while Beecher may have benefitted from the absence of several Section 9795.4(b) factors, he is essentially asking this Court to

reweigh all of the factors, which we are not permitted to do. **See Meals**, 912 A.2d at 222-223 (held that the reviewing court "stepped beyond its authority when it reweighed the [SVP] evidence, giving more weight to 'absent' factors than to those found and relied upon by the trial court, and ignoring the Commonwealth's expert's explanation of the relevance of the absent factors"). Therefore, based upon the totality of circumstances and information available to the trial court, we conclude there was sufficient evidence to designate Beecher as an SVP.[12] Accordingly, his second arguments fails, and we affirm the judgment of sentence.

_____

[12] We note that Beecher's reliance on **Commonwealth v. Plucinski**, 868 A.2d 20 (Pa. Super. 2005), is misplaced. In that case, the defendant was the stepfather of the minor victim, and lived with her six years before he began sexually assaulting her. **Id.** at 21-22. In **Plucinski**, the SOAB's diagnosis of a mental disorder was called into question both by the defendant's expert witness, and this Court on appeal. Furthermore, the defendant's expert disagreed with the SOAB expert's conclusion that the defendant engaged in predatory behavior. On appeal, a panel of this Court reversed the defendant's classification as an SVP, finding that "numerous statutory factors necessary to support a SVP classification were absent; significantly absent is a showing of the likelihood of re-offense." **Id.** at 27. However, the Pennsylvania Supreme Court in **Meals**, **supra**, specifically disapproved of this type of weighing the statutory factors. **Meals**, 912 A.2d at 222-223. Here, on the other hand, Dr. Mechanick was not in great dispute with Dr. Mapes because he opined that if Beecher did the acts to which he has pled *nolo contendere*, he would have met the criteria in for classification as an SVP. N.T., 8/31/2012, at 114 ("Q[:] So provided that [Beecher] were, you don't agree with the personality disorder by doctor – if [Beecher] met the personality disorder, mental abnormality of personality disorder NOS, and based upon the conduct that is alleged, showing predatory behavior, you would agree [he] should be classified as a sexual

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/2014

---

*(Footnote Continued)*

violent predator; is that correct?  A[:]  That is correct.").  Therefore, in addition to the factual differences with respect to this case, the holding in ***Plucinski*** was called into question by the Supreme Court in ***Meals***.